IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DEANNA BECKNER,                    )
                                   )
                    Plaintiff,     )
                                   )
vs.                                )        Case No. 06-1012-JTM
                                   )
LINDA S. MCMAHON,[1]               )
Acting Commissioner of            )
Social Security,                   )
                                   )
                    Defendant.     )
_____)


RECOMMENDATION AND REPORT


        This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

        The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be

_____

        [1]On January 20, 2007, Linda S. McMahon became Acting
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Linda S.
McMahon is substituted for Commissioner Jo Anne B. Barnhart as
the defendant.  In accordance with the last sentence of 42 U.S.C.
§ 405(g), no further action is necessary.

conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can

2

establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to

step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

Administrative law judge (ALJ) George Bock issued his decision on July 3, 2005 (R. at 20-29).  At step one, the ALJ found that plaintiff had not performed substantial gainful

4

activity since her alleged onset date of January 20, 2002 (R. at 21). At step two, the ALJ stated that plaintiff has the following severe impairments: dysthymia, social anxiety and passive aggressive personality disorders. The ALJ further found that complaints of asthma and arthritis of the knees were not severe impairments (R. at 24). At step three, the ALJ concluded that plaintiff's impairments do not meet or equal a listed impairment (R. at 24-25). After establishing plaintiff's RFC, the ALJ, relying on the testimony of a vocational expert (VE) found that plaintiff could perform past relevant work. In the alternative, the ALJ found at step five that plaintiff could perform a significant number of other jobs in the national economy. Therefore, the ALJ concluded that plaintiff was not disabled (R. at 27-28).

**I. Did the ALJ err in his RFC findings and analysis and in his analysis of the opinions of treating sources?**

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why

the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.

SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);

Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891

n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118,

1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative

discussion describing how the evidence supports each conclusion,

citing to specific medical facts and nonmedical evidence, the

court will conclude that his RFC conclusions are not supported by

substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx.

781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must

be sufficiently articulated so that it is capable of meaningful

review; the ALJ is charged with carefully considering all of the

relevant evidence and linking his findings to specific evidence.

Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5,

2003).  It is insufficient for the ALJ to only generally discuss

the evidence, but fail to relate that evidence to his

conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49

F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to

comply with SSR 96-8p because he has not linked his RFC

determination with specific evidence in the record, the court

cannot adequately assess whether relevant evidence supports the

ALJ's RFC determination.  Such bare conclusions are beyond

meaningful judicial review.  Brown v. Commissioner of the Social

Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan.

2003).

The ALJ's RFC findings and analysis are as follows:

> The undersigned finds that the claimant has no significant physical or exertional limitations **with mental restrictions regarding no work with public and minimum contact with coworkers and supervisors. In reaching this conclusion, the undersigned is in general agreement with the medical opinions of the State agency medical consultants regarding the claimant's ability to do work-related activities (exhibit B8F, B9F)**. Although they did not examine the claimant, they provided specific reasons for their opinions about the claimant's residual functional capacity showing that they were grounded in the evidence in the case records, including careful consideration of the claimant's allegations about symptoms and limitations. **The undersigned finds that evidence received into the record after the reconsideration did not provide any new or material information that would alter any finding about the claimant's residual functional capacity.**
>
> Finally in reaching this decision, the undersigned has considered the residual functional assessment submitted by Dr. Hon on April 20, 2005 indicating moderate to marked limitation of function. However, as noted previously this is not reflected in the treatment/medication notes of the doctor and cannot be given controlling weight. Although a church counselor, Ms. Munson, had encouraged the payment of disability, this is not an acceptable medical source and the opinion of disability is an opinion reserved for the Administration. Overall, a review of all the evidence indicates that the claimant is capable of work that does not involve working with the public and with minimum contact with co-workers and supervisors as

> noted above (20 CFR §§404.1527 and 416.927,
> Social Security Rulings 96-2p, 96-6p, 96-8p).

(R. at 26-27, emphasis added).

Earlier in his opinion, the ALJ had made the following comments concerning the opinions of Dr. Hon:

> Dr. Hon then completed a mental residual
> functional capacity at the request of counsel
> dated April 20, 2005. He reported that
> although the claimant does not help herself
> to the degree she could, she is still
> dysfunctional and would have difficulty
> keeping a job. Out of 20 areas of function,
> he found 8 areas of moderate limitations and
> 10 areas of marked limitation (exhibit B13F).
>
> A review of treatment/medication review notes
> did not indicate a global assessment of
> functioning below a 51. The undersigned notes
> that DSM-IV, American Psychiatric Association
> Diagnostic and Statistical Manual of Mental
> Disorders indicates that global assessment of
> functioning scores ranging from 51 to 60
> indicate moderate symptoms with 61 to 70
> indicating only mild symptoms while generally
> functioning pretty well. Therefore, this
> assessment with marked limitations is not
> consistent with his own treatment notes...
>
> Although Dr. Hon provided a disability
> assessment in April 2005 at the request of
> counsel indicating moderate to marked
> limitations of function, this is not
> reflected in the record. He has never
> indicated a assessment of functioning under
> 51. Christian counselors have indicated a GAF
> of 55. The record has indicated that the
> claimant has remained fairly stable on
> medication noting that she likes to blame
> others and present a "poor me" appearance.
> Although the claimant has reported side
> effects in the past from medication, the
> treatment notes indicate no adverse affects
> (exhibit B4F, B12F).

(R. at 23, 26).

The state agency medical consultant filled out a mental RFC assessment, finding that plaintiff was moderately limited in category # 12 (The ability to interact appropriately with the general public).  This assessment found that plaintiff was not significantly limited in 19 other categories, including category # 9 (The ability to work in coordination with or proximity to others without being distracted by them), # 14 (The ability to accept instructions and respond appropriately to criticism from supervisors), and # 15 (The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes) (R. at 367-368).  The state agency medical consultant stated in his narrative that plaintiff would have moderate difficulties interacting with the general public, and would appear capable of competitive employment that does not involve extensive interaction with the general public (R. at 371).  The ALJ stated that his RFC findings were in general agreement with the findings of the state agency medical consultant, and that no evidence subsequently entered into the record provided any new or material information that would alter the RFC findings.

Although the state agency medical consultant found only a moderate limitation in plaintiff's ability to interact appropriately with the general public, the ALJ not only found that plaintiff cannot work with the public, but also found that

plaintiff should have minimum contact with coworkers and supervisors (R. at 26).  Thus, contrary to the findings of the state agency medical consultant, the ALJ found that plaintiff had limitations which correlate with categories ## 9, 14 and 15, the ability to interact with supervisors and coworkers.  In fact, the limitations found by the ALJ have some correlation to the findings of Dr. Hon, who found plaintiff markedly limited in the ability to interact appropriately with the general public (# 12), and in the ability to accept instructions and respond appropriately to criticism from supervisors (# 14), and moderately limited in her ability to work in coordination with or proximity to others without being distracted by them (# 9), and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (## 15) (R. at 455).[2]  The ALJ failed to offer any rationale for his finding that plaintiff had greater limitations than those set forth in the state agency medical assessment, nor did he set forth any explanation for making findings that appear to correlate with some of Dr. Hon's findings even though the ALJ had stated that Dr. Hon's opinions were inconsistent with or not reflected in his treatment notes.  The ALJ's RFC findings also find support in the

---

[2]Dr. Hon's RFC assessment found that plaintiff was moderately limited in 9 categories, and markedly limited in 10 categories (R. at 454-455); the ALJ erroneously stated that Dr. Hon found plaintiff moderately limited in only 8 categories (R. at 23).

opinion of Ms. Carol Munson (a counselor who had counseled plaintiff for over 2 years) that plaintiff has a great deal of difficulty with establishing and maintaining relationships, and that this would make it very difficult for her to maintain a positive relationship with an employer (R. at 139).  However, the ALJ gave Ms. Munson's opinion little or no weight (R. at 27).

In the case of <u>Brown v. Commissioner of the Social Security Administration</u>, 245 F. Supp.2d 1175 (D. Kan. 2003), the court held as follows:

> Although the ALJ purports to base these findings on the State Agency Medical Consultants' Physical Residual Functional Capacity Assessment...the ALJ's findings are not consistent with many items reflected in the Assessment...The ALJ, however, never explains why he makes findings inconsistent with the Assessment nor does he even acknowledge that he is rejecting portions of the Assessment. He cites to no medical records, testimony, or other evidence in support of his RFC findings, other than the Assessment. And, he fails to explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. In short, the Court finds that the ALJ has failed to link his RFC determination with specific evidence in the record and has failed to comply with Social Security Ruling 96-8p.
>
> Due to these failures of the ALJ, the Court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. His bare conclusions are simply beyond meaningful judicial review. The Court therefore holds that the case must be remanded, and upon remand the Commissioner shall provide the proper narrative discussion describing how the evidence supports his

> conclusions at step four, as required by
> Social Security Ruling 96-8p, and how the
> inconsistencies or ambiguities in the
> evidence were considered and resolved. This
> shall include a discussion of the reasons
> supporting the ALJ's apparent rejection of
> certain findings of the State Agency Medical
> Consultants' Physical Residual Functional
> Capacity Assessment.

Brown, 245 F. Supp.2d at 1186-1187.

As in Brown, the ALJ in this case never explained why he made findings inconsistent with the state agency mental RFC assessment; in fact, the ALJ indicated that his RFC findings were in "general agreement" with the state agency mental RFC assessment, and that no evidence subsequently entered into the record provided any new or material information that would alter his RFC findings.  The ALJ did not cite to any other evidence as a basis for his finding that plaintiff had additional limitations beyond those set forth in the state agency RFC assessment.  The ALJ has failed to explain how material inconsistencies in the evidence in the case record were considered and resolved.  Thus, the court finds that the ALJ has failed to link his mental RFC determination with specific evidence in the record and has therefore failed to comply with SSR 96-8p.  For these reasons, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  The ALJ's bare conclusions are beyond meaningful judicial review.  Therefore, the case shall be remanded in order for the ALJ to comply with SSR 96-8p.

12

The ALJ also discounted the opinions of Dr. Hon because the GAF scores were never below 51; the ALJ noted that scores from 51-60 indicate moderate symptoms and 61-70 indicate only mild symptoms while generally functioning pretty well (R. at 23). This statement by the ALJ implies that there were GAF scores in the 51-60 range and in the 61-70 range.  However, a review of the record only indicates seven GAF scores of 51 (R. at 214, 280, 287, 289, 294, 297, 444) and two GAF scores of 55 (204, 452).[3] The court found no GAF scores in the 61-70 range, and defendant's brief does not dispute this allegation of error by the plaintiff. Therefore, the court finds that the implication of the ALJ that there were scores in the 61-70 range is erroneous.

The court would further note it is not at all clear that GAF

---

[3]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. Scores ranging from 51-70 indicate the following:

> 61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning**...but generally functioning **pretty well, has some meaningful interpersonal relationships** (emphasis in original).

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

13

scores of 51 and 55 are clearly inconsistent with RFC findings of
moderate impairments in 9 categories and marked impairments in 10
categories, as asserted by the ALJ.  Dr. Hon, in the narrative
accompanying his RFC assessment stated that:

> Although she doesn't help herself to the
> degree she could, she still is markedly
> dysfunctional and would have much, much
> difficulty keeping a job.

(R. at 456).  Dr. Hon's RFC assessment was signed on April 20,
2005 (R. at 456).  In a treatment noted signed the same day, Dr.
Hon stated that plaintiff's GAF was 51 (R. at 444-445).  Thus,
Dr. Hon found no inconsistency between a GAF score of 51 and his
RFC assessment.

However, if the ALJ believed that the GAF scores and the
opinions of Dr. Hon were in conflict, then the ALJ should have
recontacted Dr. Hon in order to resolve the conflict.  In the
case of Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th
Cir.2004), the court held that if the ALJ concluded that the
treating physician had failed to provide sufficient support for
his conclusions about claimant's limitations, the severity of
those limitations, or the effect of those limitations on their
ability to work, the ALJ should have recontacted the treating
physician for clarification of his opinion before rejecting it.
20 C.F.R. § 404.1512(e)(1) (2006 at 356) and 20 C.F.R. §
416.912(e)(1) (2006 at 900) state:

**We will seek additional evidence or**

14

> **clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved**, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques (emphasis added).

In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

1996 WL 374183 at *6.

When this case is remanded, the ALJ must not examine the opinions of the treatment providers (Dr. Hon and Ms. Munson) in isolation, but they must be examined in light of the entire evidentiary record, including the opinions and assessments of the other treatment providers.  In the case of <u>Lackey v. Barnhart</u>, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005), the court noted that plaintiff does not and need not claim that one medical report or opinion from a treatment provider is sufficient in itself to conclusively demonstrate that he is disabled.  Rather, the court noted that it was concerned with the necessarily incremental effect of each individual medical report or opinion from a treatment provider on the aggregate assessment of the

15

evidentiary record, and in particular on the evaluations and opinions of other treatment providers, and the need for the ALJ to take this into consideration.

**II.  Did the ALJ err in his credibility analysis?**

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for

16

the ALJ to use standard boilerplate language which fails to set
forth the specific evidence the ALJ considered in determining
that a claimant's complaints were not credible.   Hardman v.
Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).   On the other hand,
an ALJ's credibility determination which does not rest on mere
boilerplate language, but which is linked to specific findings of
fact fairly derived from the record, will be affirmed by the
court.   White, 287 F.3d at 909-910.

     In his decision, the ALJ stated that the medication notes at
COMCARE (Dr. Hon) indicated that plaintiff's condition was stable
when compliant with medication, and that the treatment notes
indicate no adverse effects from medication (R. at 26).   When
this case is remanded, this finding must be reexamined in light
of certain statements by Dr. Hon.   First, the ALJ should take
into account the statement of Dr. Hon on April 18, 2005 that in
searching for medication that might help plaintiff's anxiety, he
found that everything would either oversedate her, cause her side
effects, or she had already been on it (R. at 443, 444).   Second,
the ALJ should take into account that Dr. Hon had also indicated
on January 5, 2005 that he had stopped certain medications
because they were ineffective (R. at 449, 451).

     The ALJ had stated that although plaintiff had reported she
does not like to be around people, "this is not consistent with
her daily activities" (R. at 26).   However, the ALJ then set

17

forth RFC limitations that she have no work with the public and minimum contact with coworkers and supervisors (R. at 26).  The court finds that the RFC limitations set by the ALJ seem to be consistent with plaintiff's assertion that she does not like being around people, and therefore supportive of plaintiff's credibility.

For these reasons, a new credibility analysis shall be undertaken when the case is remanded.  Furthermore, the analysis of plaintiff's credibility must also take into account the opinions of the treatment providers, as noted above.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on February 5, 2007.

                           s/John Thomas Reid
                           JOHN THOMAS REID
                           United States Magistrate Judge

18